E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
RYAN WATERS (Cal. Bar No. 268015)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3111
     Facsimile: (213) 894-0142
     E-mail: ryan.waters@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>$509,573.00 IN BANK FUNDS,<br><br>            Defendant. | No. 2:24-cv-<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>18 U.S.C. §§ 981(a)(1)(A) and (C) and 984<br><br>[U.S.S.S.] |

Plaintiff United States of America brings this claim against defendant $509,573.00 in Bank Funds, and alleges as follows:

**JURISDICTION AND VENUE**

1. The government brings this in rem civil forfeiture action pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984.

2. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345 and 1355.

1

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

**PERSONS AND ENTITIES**

4. The plaintiff in this action is the United States of America.

5. The defendant in this action is $509,573.00 in Bank Funds seized pursuant to a federal seizure warrant on November 21, 2023, from a Bank of America account with the last four digits ending in 0808 ("BofA Account 0808"), held in the name of XULI Trade Limited (the "defendant funds"). The defendant funds were seized at Bank of America, 888 W 7th St., Los Angeles, CA 90017.

6. The defendant funds are currently in the custody of the United States Secret Service ("USSS") in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of XULI Trade Limited, Simin Zhu, and the victims identified herein as R.S., Q.L., X.Z., W.L, K.D., Y.C., J.C., M.M., E.D., R.B., T.C., T.G., G.R., and M.K may be adversely affected by these proceedings.

**BASIS FOR FORFEITURE**

*Background on Confidence Frauds*

8. A "confidence fraud" involves a victim transferring money and/or property as a result of being deceived or misled by the offender. Often a fraudster deceives a victim into believing they have a close relationship--whether familial, friendly, or romantic--and leverages that relationship to persuade the victim to send money, provide personal and financial information, and/or purchase items of value.

9. Victims of confidence frauds often do not recognize that

2

they are being defrauded for many months or more, and sometimes never recognize that they have been defrauded, because they are, or believe they are, in a legitimate relationship with the person making the false claims or promises to them.  Therefore, it is not uncommon to observe multiple wires and transfers being sent to the same beneficiary or multiple beneficiaries over a period of time.  Some victims of confidence frauds are not completely truthful with, or seek to impede law enforcement officers who question them about the money they have transferred, in part to protect their purported friend.

10. Sometimes digital currency, also known as "crypto currency," "cryptocurrency" and "virtual currency," is used in confidence frauds.  Digital currency is generally defined as an electronic-sourced unit of value that can be used as a substitute for fiat currency (i.e., currency created and regulated by a government), but unlike fiat currency has no physical form and instead exists entirely on the internet.  In addition, digital currency is generated and controlled through computer software operating on a decentralized peer-to-peer network.  Digital currency is often used for conducting illegal transactions or for concealing or disguising the true nature, source, location, ownership or control of illegally obtained criminal proceeds. Bitcoin is one of the most commonly used digital currencies.

11. A digital currency exchange (an "exchange") is a brick-and-mortar or online business that allows customers to trade digital currencies for fiat currencies or other digital currencies.  Most exchanges are located outside the United States in order to avoid

regulation and legal requirements. Coinbase, which operates in the United States, is one of the largest and most popular exchanges.

### *The Law Enforcement Investigation In This Case*

12. The USSS has investigated a confidence fraud whereby multiple victims transferred funds based on fraudulent pretenses into a Cathay Bank account with the last 4 digits ending in 7373 ("Cathay Account 7373"). A portion of those funds were ultimately transferred into BofA Account 0808 from which the defendant funds were seized. As part of the investigation, the USSS learned the information set forth below.

### *Victim E.D. is Defrauded*

13. E.D. was contacted on his LinkedIn account by a woman who went by the name Xiao Xue or "Sue". Sue stated she was in the garment business and wanted to enter the construction field, where E.D. worked. After the initial LinkedIn conversation, most other conversations took place on the WhatsApp instant messaging service.

14. Sue proposed that E.D. invest in cryptocurrency via the Sundell/FX6 platform and claimed she invested $200,000 of her own money. On April 11, 2023, believing he was investing in cryptocurrency, E.D. transferred $300,000.00 to Cathay Account 7373.

15. E.D. requested to withdraw his funds after the account value purportedly increased to $700,000. E.D. was then told to pay 25% of the account balance for British tax purposes. E.D. refused to pay this tax fee and was told his account was frozen. E.D. filed a police report with the Okaloosa County Sheriff's Office as he believed he was a victim of fraud.

### *Victim M.M. is Defrauded*

16. M.M. was contacted via Facebook direct messaging by a woman who went by the name Yuan Yuan Chen ("Chen"). All correspondence between M.M. and Chen was through Facebook, via email or speaking via cell phone.

17. Chen eventually convinced M.M. to invest funds in Cornix.com, a purported cryptocurrency trading platform. Chen told M.M. that she would invest $1,000,000 of her own money to get him started. On April 11, 2023, believing that he was making a cryptocurrency investment with Cornix.com, M.M. transferred $100,000 to Cathay Account 7373. M.M. received an account number when he made the wire transfer to Cornix.com.

18. M.M. began to grow suspicious of his dealings with Chen and attempted to withdraw his investment but was told to provide an additional $600,000.00. M.M. was threatened that his account would be closed and that his investments would be sold. The individual who made these threats did not provide their name or phone number. M.M. began to believe he was defrauded when the individual made the request for additional funds and when the individual provided him with an upfront state income tax form from Colorado, which was spelled incorrectly. Ultimately, M.M. didn't send more funds. M.M. said his account with Cornix.com is now closed and that he no longer has access to the funds.

5

*Victim Y.C. is Defrauded*

19. Y.C. was contacted on X, formally known as Twitter, by a woman who went by the name "Lucy".

20. Lucy eventually convinced Y.C. to invest $33,000.00 in a purported cryptocurrency trading platform called Astro EX. On April 11, 2023, believing that she was making a cryptocurrency investment with Astro EX, Y.C. transferred $33,000 to Cathay Account 7373. Astro EX has since changed to zbnasz.com.

*21.* After investing her funds, Y.C. checked her current account earnings, which showed a purported balance of $2,597,981.13. Y.C. attempted to withdraw her funds but was unsuccessful. Y.C. has made numerous attempts to get in contact with Lucy via phone and via X. Y.C. has been unable to get in touch with Lucy or anyone else to assist her with withdrawing her investment and no longer has access to the funds.

*Victim R.B. is Defrauded*

22. R.B., on an investment website, was contacted by a woman who said she was born in Korea but raised in Malaysia.

23. R.B. was directed by this individual to setup an account with EliteCMF.com, a purported trading platform, with account number 170414. On April 11, 2023, believing he was making a cryptocurrency investment with EliteCMF.com, R.B. transferred $70,100.00 to Cathay Account 7373.

24. R.B. checked his account balance on EliteCMF.com and learned his initial investment of $70,100.00 purportedly increased in value to over $1,000,000. When the value was later decreasing, he was asked to increase his investment by $500,000. R.B. did not send additional funds to EliteCMF.com and no longer has access to the

6

funds.

*Tracing Fraud Proceeds into BofA Account 0808*

25. The following fraudulent proceeds, described above, were deposited into Cathay Account 7373:

    a. On April 11, 2023, a $100,000.00 wire from victim M.M.;

    b. On April 11, 2023, a $33,000.00 wire from victim Y.C.;

    c. On April 11, 2023, a $70,100.00 wire from victim R.B.; and

    d. On April 11, 2023, a $300,000.00 wire from victim E.D.

26. In addition, the USSS has identified 9 additional suspicious deposits into Cathay Account 7373 but has been unsuccessful in contacting and interviewing the individuals associated with the suspicious deposits/transfers and believed to be victims of this scheme. These other presumed victims made $452,582.00 in suspicious deposits into Cathay Account 7373 (the "Additional Deposits").

27. The Additional Deposits share similarities with the above-described fraud victim transfers into Cathay Account 7373, in that they (1) were made in the same time period as the above-described transfers of fraud proceeds; (2) were made from individuals in locations throughout the United States without the kind of geographic patterns that might be expected from a legitimate business; (3) were made from people who had not previously deposited funds in Cathay Account 7373; and (4) were made in large round-dollar amounts, which

7

are inconsistent with normal business transfers (which typically reflect taxes and other costs). Accordingly, the Additional Deposits are also fraud proceeds from victims of this scheme.

28. On May 22, 2023, BofA Account 0808 received tainted funds from Cathay Account 7373 when a $509,583.00 cashier's check drawn on Cathay Account 7373 was deposited into BofA Account 0808. Therefore, the defendant funds seized by the government from BofA Account 0808 represent traceable fraud proceeds.

### FIRST CLAIM FOR RELIEF

29. Based on the facts set out above, plaintiff United States of America alleges that the defendant funds constitute or are derived from proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud), which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1). The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). In addition, to the extent that the defendant funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant funds subject to forfeiture pursuant to 18 U.S.C. § 984.

### SECOND CLAIM FOR RELIEF

30. Based on the facts set out above, plaintiff United States of America alleges that the defendant funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a violation

of 18 U.S.C. § 1343 (wire fraud). The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). In addition, to the extent that the defendant funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant funds subject to forfeiture pursuant to 18 U.S.C. § 984.

### **THIRD CLAIM FOR RELIEF**

31. Based on the facts set out above, plaintiff United States of America alleges that the defendant funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1957(a), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. § 1343 (wire fraud). The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). In addition, to the extent that the defendant funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant funds subject to forfeiture pursuant to 18 U.S.C. § 984.

WHEREFORE, plaintiff United States of America prays that:

(a) due process issue to enforce the forfeiture of the defendant funds;

(b) due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) this Court decree forfeiture of the defendant funds to the

1 United States of America for disposition according to law; and

2     (d)   for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: January 22, 2024

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section

   */s/ Ryan Waters*
RYAN WATERS
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

## VERIFICATION

I, Fred Apodaca, hereby declare that:

1. I am a Special Agent with the United States Secret Service.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed January 16, 2024 in Los Angeles, California.

*[signature]*

FRED APODACA
Special Agent